IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ANDREW L. MOFFETT,

    Plaintiff,

  v.

CONTRA COSTA COUNTY SHERIFF'S DEPUTY GONZALEZ, et al.,

    Defendants.

                                   /

No. C 12-4359 YGR (PR)

**ORDER DENYING DEFENDANTS' MOTION TO DISMISS; AND SETTING NEW BRIEFING SCHEDULE**

(Docket No. 22)

      Plaintiff, a state prisoner proceeding *pro se*, filed a civil rights complaint pursuant to 42 U.S.C. § 1983 alleging that he was subjected to improper force by Contra Costa County Sheriff's Deputies Gonzalez and County as well as other Doe Defendants after he was processed at intake at the Martinez Detention Facility ("MDF") on July 7, 2011. Plaintiff, who was convicted of first degree murder in connection with the 2005 shooting death of a police officer, claims he was transferred to MDF from Lancaster State Prison because he "had court the following day July 8, 2011 in the superior court before Judge L. Brady."[1] (Compl., Ex. B at 3.) Plaintiff claims that he suffered from a fractured left shoulder blade as a result of the attack on July 7, 2011.

      In its initial review, the Court found Plaintiff's excessive force claim cognizable under section 1983 as a violation of his Eighth Amendment right against cruel and unusual punishment as to Defendants Gonzalez and County, and dismissed the claims as to the remaining Doe Defendants without prejudice to adding them as named defendants should Plaintiff learn their identities through discovery. The Court then ordered service of the complaint on Defendants Gonzalez and County.

      Before the Court is Defendants' unenumerated motion under Federal Rule of Civil Procedure 12(b) for failure to exhaust administrative remedies under the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e(a). Plaintiff has filed an opposition, and Defendants have filed a

---

[1] Plaintiff claims he "remained housed [at MDF] until July 26, 2011 and returned back to prison with a modified sentence." (Opp'n at 2.)

reply. In an Order dated January 31, 2014, the Court denied Plaintiff's request to file a sur-reply.

For the reasons discussed below, the Court DENIES Defendants' motion to dismiss for failure to exhaust administrative remedies and sets a new briefing schedule.

## DISCUSSION

### I. Exhaustion Under the PLRA

The PLRA amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion in prisoner cases covered by § 1997e(a) is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). Exhaustion is a prerequisite for all prisoner suits regarding the conditions of their confinement, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. *Id.* at 532.

Exhaustion of all "available" remedies is mandatory; those remedies need not meet federal standards, nor must they be "plain, speedy, and effective." *Id.* at 524; *Booth v. Churner*, 532 U.S. 731, 739-40 (2001). Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit. *Booth*, 532 U.S. at 741. A prisoner "seeking only money damages must complete a prison administrative process that could provide some sort of relief on the complaint stated, but no money." *Id.* at 734.[2]

The PLRA requires *proper* exhaustion of administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 83 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91. Thus, compliance with the

---

[2] That the administrative procedure cannot result in the particular form of relief requested by the prisoner does not excuse exhaustion because some sort of relief or responsive action may result from the grievance. *See Booth*, 532 U.S. at 737; *see also Porter*, 534 U.S. at 525 (purposes of exhaustion requirement include allowing prison to take responsive action, filtering out frivolous cases, and creating administrative records).

facility's grievance procedures is required by the PLRA to properly exhaust. *Id.* The PLRA's exhaustion requirement cannot be satisfied "by filing an untimely or otherwise procedurally defective administrative grievance or appeal." *Id.* at 84.

The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the facility's requirements, and not the PLRA, that define the boundaries of proper exhaustion. *Jones v. Bock*, 549 U.S. 199, 218 (2007). Once the defendants meet their burden, the burden shifts to the plaintiff to demonstrate that the grievance procedure was unavailable. *See Albino v. Baca*, 697 F.3d 1023, 1040 (9th Cir. 2012), *rehearing en banc granted by Albino v. Baca*, 709 F.3d 994 (9th Cir. Mar. 12, 2013). An inmate's lack of awareness of the existence of the facility's grievance procedure does not make that procedure unavailable when the inmate could learn of the procedure with reasonable effort. *Albino*, 697 F.3d at 1040. Affirmative acts by jail or prison officials that disrupt or prevent the exhaust of administrative remedies may make those remedies effectively unavailable. *Id.* at 1033-34.

Section 1073 of Title 15 of the California Code of Regulations provides county jail inmates with a right to appeal and have resolved grievances relating to their confinement, as further explained below.

## II.     County Jail Procedures

In support of their motion to dismiss for failure exhaust administrative remedies, Defendants have submitted the declaration of Contra Costa County Sheriff's Department Lieutenant and MDF Facility Commander Chris Vannoy, who is presently assigned to the Custody Services Bureau ("CSB") and is responsible for reviewing Contra Costa County Sheriff's Department policies and procedures. (Decl. Chris Vannoy In Supp. Defs.' Mot. Dismiss ("Vannoy Decl.") ¶¶ 2-4.) The CSB maintains a written policy and procedure manual ("CSB Manual") that applies to all the County detention facilities, including MDF. (Vannoy Decl. ¶ 5.) These policies and procedures address the requirements that inmates must follow in order to properly submit and appeal grievances, including grievances regarding excessive force. (*Id.*)

Specifically, inmates must first make an "informal" verbal grievance, and then a "formal"

written grievance on an inmate request form. (Vannoy Decl. ¶ 6 & Ex. A § II(A), (B).) The formal written grievance must be made within forty-eight hours after the incident or condition that is the subject of the complaint. (*Id.* Ex. A § II(B)(1).) The formal grievance is reviewed by a deputy and, if the deputy cannot resolve the grievance, it is forwarded to either the appropriate staff member or to a supervisor. (*Id.* Ex. A § II (B)(4).) The response to the formal grievance may be appealed in writing within five days to the Facility Commander. (*Id.* Ex. A § (II)(B)(9); Ex. B § I(A)(1).) The Facility Commander or a designee must respond to the grievance within five days. (*Id.* Ex. B § I(A)(2)(c).) The Facility Commander's response may then be appealed through the "detention division chain of command." (*Id.* ¶ 7.)

At the time Plaintiff was incarcerated at MDF, the discrete steps in the chain of command were: Level 1 (Informal Grievance to a Deputy); Level 2 (Formal Grievance to a Deputy); Level 3 (Appeal to the Facility Commander or his designee); Level 4 (Appeal to MDF Facility Captain); Level 5 (Appeal to the Detention Division Captain); and, finally, Level 6 (Appeal to the CSB Assistant Sheriff). (*Id.*) An inmate must proceed up the chain of command through each of the six discrete levels of appeal -- and do so in the proper order -- to completely and properly exhaust his administrative remedies. (*Id.*)

All inmates are shown a video and given an orientation describing the policies and procedures for filing administrative grievances each time they are booked into custody at any Contra Costa County Jail facility. (*Id.* ¶ 8.) A written public information manual explaining these procedures is available on all housing units, and all jail staff members are available to explain the procedures to the inmates. (*Id.* ¶ 9.) In his opposition, Plaintiff acknowledges his awareness of the "Contra Costa County Jail grievance/complaint system." (Opp'n at 8.) He has attached the portion from the CSB Manual dealing with "Inmate Grievance Procedures." (Decl. Pl. In Supp. Opp'n ("Pl.'s Decl"), Ex. 1.)

### III. Factual Background Relating to Exhaustion

All inmate grievances are stored in an inmate's booking file. (Vannoy Decl. ¶ 7 & Ex. B

§ I(A)(2)(g).) Defendants have submitted evidence that a search of Plaintiff's booking file and jail records does not produce evidence that he properly submitted a grievance relating to the July 7, 2011 incident to all levels of review before filing the instant action. (*Id.* ¶ 11.)

The evidence submitted by Defendants meets their burden of establishing Plaintiff's failure to exhaust. *See Albino*, 697 F.3d at 1031-32 (defendants' burden of establishing nonexhaustion is very low; they need only show that grievance procedure existed and that plaintiff did not exhaust grievance procedure). The burden now shifts to Plaintiff to demonstrate that the grievance procedure was unavailable to him. *See id.* at 1032.

Plaintiff has submitted a declaration filed under penalty of perjury stating that the grievance procedure was unavailable to him because jail officials prevented him from submitting a grievance relating to the excessive force claim at issue. (Opp'n at 5-6; Pl.'s Decl.)

First, Plaintiff claims that he made several attempts to make an "informal" verbal grievance on July 7, 2011, directly after the incident of excessive force. (Opp'n at 5.) First, Plaintiff "pleaded for medical attention for his painful injuries" from Defendants. (Pl.'s Decl. ¶ 10.) However, Defendants ignored his requests. (*Id.*) Plaintiff claims that his "intent was to get medical attention for [his] injuries and to obtain access to filing a grievance/complaint regarding the attack via medical staff." (*Id.*) Plaintiff claims that he then asked Defendants directly for a "county jail grievance/complaint form" in order to submit his "formal" written grievance; however, Defendants again ignored his request. (*Id.* ¶ 11.) During shift-change, Plaintiff made the same request to the "shift-change relief officer," who also refused, stating: "We are not going to help a cop killer file complaints against our people . . . heard you got your ass kicked today." (*Id.* ¶ 12.)

The next day, July 8, 2011, Plaintiff claims he attempted to "preserve [his] claim" by reporting the attack to Judge Brady during his court appearance. (*Id.* ¶ 15.) However, Judge Brady "took no action to ensure that county jail staff provide [Plaintiff] with a county jail grievance/complaint form." (*Id.*)

On July 9, 2011, which is within the forty-eight-hour time frame required to do so, Plaintiff claims he "composed a handwritten complaint on blank paper regarding the July 7, 2011 attack" and

5

handed the complaint to Defendant County "for filing and processing pursuant to county jail procedures No. 2.16.04 [from the CSB Manual]." (*Id.* ¶ 16.) Plaintiff claims that Defendant County took his complaint and "began ripping up the complaint while threatening to stomp Plaintiff senseless if he wrote another complaint about the July 7, 2011 attack incident . . . ." (*Id.*)

On July 15, 2011, Plaintiff "composed a second handwritten complaint on blank paper regarding the July 7, 2011 attack . . . ask[ing] that it be accepted and processed in place of the original because he ha[d] been denied access to a county jail grievance/complaint form and that he had been threatened by [Defendant] County." (*Id.* ¶ 17.) Plaintiff states that in order to "circumvent the aforementioned filing obstructions and the threatened beating, [he] entrusted the complaint to another inmate and asked him to file it for [Plaintiff]." (*Id.*) However, Plaintiff did not receive a response from the complaint. (*Id.*)

Plaintiff "became afraid to submit another complaint through the corrupt county jail processing system . . ." (*Id.* ¶ 18.) Therefore, Plaintiff claims he was forced to turn to alternative means to exhaust his excessive force claim. (*Id.* ¶¶ 19-21.) Plaintiff claims he exhausted his claim as follows:

(1)   On July 11, 2001, Plaintiff asked his mother, Felicia Biossere, to file a complaint with the CSB, (Compl., Ex. B.);

(2)   On December 5, 2011, Plaintiff filed a complaint regarding the July 7, 2011 incident with the Contra Costa County Board of Supervisors, (*id.*), and that complaint was denied on January 1, 2012, (Compl., Ex. A);

(3)   On January 9, 2012, Plaintiff filed a "Citizen's Report" with the Contra Costa County Office of the Sheriff, (Compl., Ex. B).

In their reply, Defendants claim that Plaintiff has manufactured the aforementioned allegations that the grievance procedure was unavailable to him and that he had to turn to alternative means to exhaust his claim. (Reply at 1.) They argue that Plaintiff's "'new' evidence is not entitled to any weight because of the conspicuous timing and novelty of the story, the contradictory judicial admissions, and Plaintiff's failure to explain why his past and present reasons for not exhausting are

6

1 as different as night and day." (*Id.*)  In addition, Defendants have attached a declaration from
2 Defendant County in which he

> emphatically den[ies] the accusations by [Plaintiff] that [he]: (a) refused to give [Plaintiff] a form for any improper purpose, such as to prevent him from filing a grievance; (b) destroyed any forms or handwritten complaints given to [him] by [Plaintiff]; (c) threatened to retaliate against [Plaintiff] for filing grievances or handwritten complaint; or (d) confiscated any of [Plaintiff's] notes or records in an effort to 'cover-up' anything.

(Decl. Roderick County In Supp. Defs.' Mot. Dismiss ¶ 7.)

**IV.     Analysis**

The PLRA requires that an inmate exhaust such administrative remedies "as are available." 42 U.S.C. § 1997e(a).  As the Ninth Circuit has repeatedly reiterated, the PLRA does not require exhaustion when circumstances render administrative remedies "effectively unavailable." *Sapp v. Kimbrell*, 623 F.3d 813, 822 (9th Cir. 2010).  As explained above, under the law of the circuit, "affirmative actions by jail staff preventing proper exhaustion, even if done innocently, make administrative remedies effectively unavailable." *Albino*, 697 F.3d at 1034; *see also Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (if employees of a facility prevent the filing of a grievance, the exhaustion requirement may be "unavailable" and defendants estopped from raising non-exhaustion as an affirmative defense).  Courts have repeatedly held that an administrative remedy becomes "unavailable" for purposes of the exhaustion requirement if prison officials do not respond to a properly filed grievance or if they otherwise use affirmative misconduct to thwart a prisoner's attempts to exhaust.  *See e.g., Nunez v. Duncan*, 591 F.3d 1217, 1226 (9th Cir. 2010); *Brown v. Valoff*, 422 F.3d 926 n.18 (9th Cir. 2005); *Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001) (finding allegations that prison officials failed to respond to his written requests for grievance forms were sufficient to raise an inference that the prisoner had exhausted his "available" administrative remedies).

In the instant case, Plaintiff asserts that jail staff, including Defendants, prevented proper exhaustion, thus rendering administrative remedies unavailable.  Defendants respond that such a contention is contrived and, in essence, not believable because Plaintiff has "suddenly remember[ed] a series of unforgettable events."  (Reply at 1.)  "In a situation such as this in which the parties offer

7

differing versions of events based on competing declarations, the issue is one of witness credibility and the court cannot make that requisite assessment on a motion to dismiss." *Buchanan v. Santos*, 2010 WL 1267353, *5 (E.D. Cal. Mar. 31, 2010). Thus, at this stage of the proceedings, the Court is compelled to accept Plaintiff's allegations that he attempted to exhaust his administrative remedies in July 2011, but was thwarted in doing so.

Accordingly, Defendants' motion to dismiss for failure to exhaust administrative remedies is DENIED.

## CONCLUSION

For the foregoing reasons, the Court orders as follows:

1. Defendants' motion to dismiss for failure to exhaust administrative remedies (Docket No. 22) is DENIED.

2. In order to expedite the resolution of this case, the following briefing schedule shall govern motions for summary judgment in this action:

    a. No later than **sixty (60) days** from the date of this Order, Defendants shall file a motion for summary judgment. The motion must be supported by adequate factual documentation, must conform in all respects to Federal Rule of Civil Procedure 56, and must include as exhibits all records and incident reports stemming from the events at issue. A motion for summary judgment also must be accompanied by a *Rand*[3] notice so that Plaintiff will have fair, timely and adequate notice of what is required of him in order to oppose the motion. *Woods v. Carey*, 684 F.3d 934, 935 (9th Cir. 2012) (notice requirement set out in *Rand* must be served concurrently with motion for summary judgment).

If Defendants are of the opinion that this case cannot be resolved by summary judgment, they shall so inform the Court prior to the date the summary judgment motion is due. All papers filed with the Court shall be promptly served on Plaintiff.

    b. Plaintiff's opposition to the dispositive motion shall be filed with the Court and served on Defendants no later than **sixty (60) days** after the date on which Defendants' motion is

---

[3] *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998).

8

filed.

        c.      Plaintiff is advised that a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case. Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact -- that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradicts the facts shown in the defendant's declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted, your case will be dismissed and there will be no trial. *Rand*, 154 F.3d at 962-63.

      (The *Rand* notice above does not excuse Defendants' obligation to serve said notice again concurrently with any motions for summary judgment. *Woods*, 684 F.3d at 935.)

        d.      Defendants shall file a reply brief no later than **fourteen (14) days** after the date Plaintiff's opposition is filed.

        e.      The motion shall be deemed submitted as of the date the reply brief is due. No hearing will be held on the motion unless the Court so orders at a later date.

      3.      It is Plaintiff's responsibility to prosecute this case. Plaintiff must keep the Court informed of any change of address and must comply with the Court's orders in a timely fashion. Pursuant to Northern District Local Rule 3-11 a party proceeding *pro se* whose address changes while an action is pending must promptly file a notice of change of address specifying the new address. *See* L.R. 3-11(a). The Court may dismiss without prejudice a complaint when: (1) mail

directed to the *pro se* party by the Court has been returned to the Court as not deliverable, and (2) the Court fails to receive within sixty days of this return a written communication from the *pro se* party indicating a current address. *See* L.R. 3-11(b).

4. Extensions of time are not favored, though reasonable extensions will be granted. Any motion for an extension of time must be filed no later than **fourteen (14) days** prior to the deadline sought to be extended.

5. This Order terminates Docket No. 22.

IT IS SO ORDERED.

DATED: February 13, 2014

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**