UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW L. MOFFETT,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>CONTRA COSTA COUNTY SHERIFF'S DEPUTY JUAN GONZALEZ,[1] et al.,<br><br>　　　　Defendants. | Case No. 12-cv-04359-YGR  (PR)<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; ADDRESSING PLAINTIFF'S PENDING MOTIONS; AND REFERRING MATTER FOR SETTLEMENT PROCEEDINGS** |

Plaintiff Andrew L. Moffett, a state prisoner, brings the instant *pro se* action under 42 U.S.C. § 1983, alleging that he was subjected to improper force by Contra Costa County Sheriff's Deputies Juan Gonzalez and Roderick County ("Defendants") as well as other Doe Defendants after he was processed at intake at the Martinez Detention Facility ("MDF") on July 7, 2011.

The parties are presently before the Court on Defendants' motion for summary judgment. Defendants move for summary judgment on the grounds that no genuine dispute of material fact exists and they are entitled to judgment as a matter of law because: "(1) Plaintiff failed to properly exhaust all available administrative remedies as required by the Prison Litigation Reform Act [("PLRA")]; (2) Plaintiff's evidence is insufficient to establish an unconstitutional use of force; and (3) Defendants are protected by qualified immunity." Dkt. 44 at 7. Also before the Court are Plaintiff's motion to compel discovery and motion for a continuance in order to oppose summary judgment under Rule 56(d) of the Federal Rules of Civil Procedure. Dkts. 58, 62.

Having read and considered the papers submitted, and being fully informed, the Court DENIES Defendants' motion for summary judgment and addresses Plaintiff's pending motions below.

---

[1] Defendant Gonzalez's named was incorrectly spelled as "Gonzolas/Gonzalous" in Plaintiff's complaint and the Court's previous Orders. Dkt. 1-1 at 3. Defendants have since informed the Court that the correct spelling is "Gonzalez," and that his first name is "Juan." Dkt. 44 at 3; Gonzalez Decl. at 4.

# BACKGROUND

## I. FACTUAL SUMMARY

### A. Plaintiff's Version

Plaintiff claims that on July 7, 2011, after he was processed at intake at MDF[2] (at which time he complained that he was not issued appropriately-sized institutional clothing), Defendants Gonzalez and County used "unprovok[ed]" excessive force against him by engaging in the following actions: placing Plaintiff in an "illegal restraint called 'a chicken wing' where a person['s] arms are being forced up behind his back at a level with his shoulder blades or higher . . ."; restraining him and then throwing him to the ground; banging his head against the ground; grabbing his "dreadlocked head to the point where [he] also thought his jaw bone was broken"; throwing him against visiting doors and a garbage can; and putting their hands and feet on him. Dkt. 1-1 at 15-16.[3] Plaintiff alleges he suffered injuries in the form of a broken bone, specifically, his left shoulder blade was fractured. *Id.* at 5, 15-17.

### B. Defendants' Version

Defendant Gonzalez claims that on July 7, 2011, he was assigned to escort inmates within MDF. Gonzalez Decl. ¶ 5.

At approximately 10:00 pm., Defendant Gonzalez escorted Plaintiff into a dressing room and provided him county issued clothing in which to change. Gonzalez Decl., Ex. A at 2. After Plaintiff changed into the clothes, he asked Defendant Gonzalez to give him a larger size. *Id.* Defendant Gonzalez stated that the clothing was the appropriate size because inmates were prohibited from wearing baggy clothing. *Id.* Plaintiff then became uncooperative and repeatedly argued with Defendant Gonzalez regarding the size of his institutional clothing. Gonzalez Decl., ¶ 6. Despite being told that his clothing fit and that baggy clothing is not permitted at MDF, Plaintiff continued to argue and yell. *Id.* Plaintiff also disobeyed direct orders to maintain silence

---

[2] Plaintiff claims he had been transferred to MDF from Lancaster State Prison because he "had court the following day July 8, 2011 in the superior court before Judge L. Brady." Dkt. 1-1 at 12.

[3] Page number citations refer to those assigned by the Court's electronic case management filing system and not those assigned by Plaintiff.

while being transported to the D Module (where his cell was located), and disobeyed direct orders to face the wall as he waited for the sally port door[4] to open for the D Module. *Id.* Instead, Plaintiff continued to argue with Defendant Gonzalez and demanded a larger size of institutional clothing. Gonzalez Decl., Ex. A at 2. After Defendant Gonzalez ordered Plaintiff to walk forward to enter the sally port, Plaintiff "turned aggressively toward [Defendant Gonzalez] and angrily said, 'this is bullshit.'" Gonzalez Decl. ¶ 7. At this moment, Defendant Gonzalez "pushed [Plaintiff] away from [him] using [his] arms, pressed [Plaintiff's] body up against the wall, and attempted to grab [Plaintiff's] arms in order to use [his] handcuffs." *Id.* Plaintiff physically resisted Defendant Gonzalez's attempts to restrain him by pulling his arms away and using his legs and body weight to push Defendant Gonzalez away. *Id.* Defendant Gonzalez continuously verbally ordered Plaintiff to place his hands behind his back and to "stop resisting [Defendant Gonzalez's] efforts to place [Plaintiff] in handcuffs." Gonzalez Decl., Ex. A at 2. Plaintiff disobeyed Defendant Gonzalez's repeated orders not to resist; therefore, Defendant Gonzalez "used an arm bar take down maneuver and brought [Plaintiff] to the floor." Gonzalez Decl. ¶ 7. When Plaintiff continued to disobey Defendant Gonzalez's orders to place his hands behind his back, and continued to resist Defendant Gonzalez's efforts to handcuff him, Defendant Gonzalez "used [his] left hand to deliver a closed-fist distraction blow to [Plaintiff's] back between his shoulder blades." *Id.* Defendant Gonzalez was then able to "use an arm bar control hold on [Plaintiff's] right arm, and Deputy County assisted by taking control of [Plaintiff's] left arm. *Id.* Defendants Gonzalez and County then walked Plaintiff to his cell without further incident. *Id.* Neither Defendant Gonzalez nor Defendant County (or any other officers) suffered any injuries as a result of this incident. Gonzalez Decl., Ex. A at 2. Plaintiff was offered medical attention, but he declined it. *Id.* Plaintiff stated that he did not suffer any injuries. *Id.*

## II. PROCEDURAL SUMMARY

In its initial review, the Court found Plaintiff's excessive force claim cognizable under section 1983 as a violation of his Eighth Amendment right against cruel and unusual punishment

---

[4] The sally port is an entry gate to the D Module consisting of two locked doors that are opened one at a time from central control. Gonzalez Decl. at 3, note 1.

as to Defendants Gonzalez and County, and dismissed the claims as to the remaining Doe Defendants without prejudice to adding them as named defendants should Plaintiff learn their identities through discovery. The Court then ordered service of the complaint on Defendants Gonzalez and County, and set a briefing schedule.

On July 3, 2013, Defendants initially filed unenumerated motion under Federal Rule of Civil Procedure 12(b) for failure to exhaust administrative remedies under the PLRA, 42 U.S.C. § 1997e(a). Dkt. 22. In opposition, Plaintiff submitted a declaration filed under penalty of perjury stating that the grievance procedure was unavailable to him because jail officials prevented him from submitting a grievance relating to the excessive force claim at issue. Dkt. 28 at 5-6, 14-18. Plaintiff asserted that jail staff, including Defendants, prevented proper exhaustion, thus rendering administrative remedies unavailable. *Id.* Defendants responded that such a contention is contrived and, in essence, not believable because Plaintiff has "suddenly remember[ed] a series of unforgettable events." Dkt. 29 at 1. In an Order dated February 13, 2014, the Court denied the motion to dismiss, stating:

> "In a situation such as this in which the parties offer differing versions of events based on competing declarations, the issue is one of witness credibility and the court cannot make that requisite assessment on a motion to dismiss." *Buchanan v. Santos*, 2010 WL 1267353, *5 (E.D. Cal. Mar. 31, 2010). Thus, at this stage of the proceedings, the Court is compelled to accept Plaintiff's allegations that he attempted to exhaust his administrative remedies in July 2011, but was thwarted in doing so.

Dkt. 28 at 7-8. The Court then set a new briefing schedule.

In accordance with that schedule, Defendants filed the instant motion for summary judgment. Dkt. 44.

After the summary judgment motion was filed, Defendants claim that Plaintiff did not propound any discovery demands on them. Whitman Decl. ¶ 5. However, Plaintiff filed requests for an extension of time to oppose the summary judgment motion. Dkts. 53. Defendants did not oppose the extension. Dkt. 54. In an Order dated December 17, 2014, the Court granted Plaintiff's requests for an extension of time and directed him to file his opposition no later than twenty-eight days from the date of that Order. Dkt. 57.

Plaintiff did not file an opposition by the aforementioned deadline, and instead, on January 5, 2015, Plaintiff filed a motion to compel discovery responses, including a request for purported video surveillance recordings of the July 3, 2011 incident at the MDF. Dkt. 58. On January 8, 2015, Defendants filed their opposition to the motion, arguing that the motion was prematurely served and filed before Plaintiff (a) submitted any discovery requests to Defendants, (b) engaged in meet and confer efforts, or (c) obtained leave of Court to file the subject motion. Dkt. 59. In general, the Court will not interfere with discovery matters unless and until the parties have satisfied the "meet and confer" requirements of the discovery rules. *See* Fed. R. Civ. P. 37(a)(2)(A) (providing that a motion to compel must include certification that the movant has in good faith conferred or attempted to confer with non-disclosing party in an effort to secure disclosure without court action). Plaintiff has not complied with this rule. Therefore, Plaintiff's motion to compel is DENIED. Dkt. 58.

On January 20, 2015, Defendants' counsel claims that he received a letter and declaration from Plaintiff requesting a third extension of time (for sixty days) to file his opposition to the summary judgment motion, and demanding an exchange of initial disclosures.[5] Whitman Decl. ¶ 8; Ex. A at 1, 3, 6; Ex. B. The letter and declaration also referenced the purported video surveillance recordings discussed in Plaintiff's motion to compel. *Id.*; Ex. A at 1, 3; Ex. B at 3. Defendants' counsel claims that he has not responded to Plaintiff's letter and declaration. Whitman Decl. ¶ 8. However, Defendants are opposed to Plaintiff's request for a sixty-day extension, are opposed to any further delays and/or extensions of time, and further point out that the Court has yet to rule on Plaintiff's motion to compel. *Id.*

Also on January 20, 2015, Plaintiff filed a request for a continuance under Rule 56(d), which involves a procedure by which a party may avoid summary judgment when such party has not had sufficient opportunity to discover affirmative evidence necessary to oppose the motion. *See Garrett v. San Francisco*, 818 F. 2d 1515, 1518 (9th Cir. 1987). In particular, Rule 56(d)

---

[5] As a *pro se* prisoner action, this action is exempt from the initial disclosure requirements of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 26(a)(1)(B)(iv). Therefore, the Court notes that the fact that Defendants did not make initial disclosures is irrelevant to consideration of the summary judgment motion.

5

1  provides that a court may deny a summary judgment motion and permit the opposing party to
2  conduct discovery where it appears that the opposing party, in the absence of such discovery, is
3  unable to present facts essential to opposing the motion.  *See* Fed. R. Civ. P. 56(d).  Defendants
4  oppose Plaintiff's request under Rule 56(d) and argue that Plaintiff has not propounded any
5  discovery demands to Defendants.   Dkt. 64; Whitman Decl. ¶9.  Specifically, Defendants claim
6  that during the twenty-one-month period since they answered the complaint on April 4, 2013,
7  Plaintiff failed to propound any discovery demands to them.  *Id.*

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that a party may move for summary judgment on some or all of the claims or defenses presented in an action.  Fed. R. Civ. P. 56(a)(1).  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *Id.; see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The movant bears the initial burden of demonstrating the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file that establish the absence of a triable issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(c)(1)(A) (requiring citation to "particular parts of materials in the record").  If the moving party meets this initial burden, the burden then shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial.  *See Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

"On a motion for summary judgment, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts.'" *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting in part *Scott v. Harris*, 550 U.S. 372, 380 (2007)).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.  A factual dispute is genuine if it "properly can be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party." *Id.* at 250.  Accordingly, a genuine issue for trial exists if the non-movant presents evidence from

6

1 which a reasonable jury, viewing the evidence in the light most favorable to that party, could

2 resolve the material issue in his or her favor. *Id.* "If the evidence is merely colorable, or is not

3 significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations

4 omitted). Only admissible evidence may be considered in ruling on a motion for summary

5 judgment. *Orr v. Bank of Am.*, 285 F.3d 764, 773 (9th Cir. 2002).

6 As noted, Plaintiff has not filed an opposition to Defendants' motion for summary

7 judgment. However, since the complaint is verified, the Court will construe it as an opposing

8 affidavit under Federal Rule of Civil Procedure 56, insofar as it is based on personal knowledge

9 and sets forth specific facts admissible in evidence. *See Schroeder v. McDonald*, 55 F.3d 454, 460

10 & nn.10-11 (9th Cir. 1995).

**IV. DISCUSSION**

    **A.     Exhaustion**

As mentioned above, the Court previously denied Defendants' unenumerated motion to dismiss for failure to exhaust administrative remedies on February 13, 2014. Dkt. 38.

However, as of April 3, 2014, the Court notes that under the new law of the circuit, in the rare event that a failure to exhaust is clear on the face of the complaint, Defendants may move for dismissal under Rule 12(b)(6) as opposed to the previous practice of moving under an unenumerated Rule 12(b) motion. *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc) (overruling *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003), which held that failure to exhaust available administrative remedies under the PLRA, should be raised by a defendant as an unenumerated Rule 12(b) motion). Otherwise if a failure to exhaust is not clear on the face of the complaint, Defendants must produce evidence proving failure to exhaust in a motion for summary judgment under Rule 56. *Id.* If undisputed evidence viewed in the light most favorable to Plaintiff shows a failure to exhaust, Defendant are entitled to summary judgment under Rule 56. *Id.* But if material facts are disputed, summary judgment should be denied and the district judge rather than a jury should determine the facts in a preliminary proceeding. *Id.* at 1168.

Further, under *Albino*, "a defendant must first prove that there was an available administrative remedy and that the prisoner did not exhaust that available remedy." *Williams v.*

7

*Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015). The burden then shifts to the plaintiff, "who must show that there is something particular in his case that made the existing and generally available administrative remedies effectively unavailable to him by 'showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile.'" *Id.* Affirmative acts by prison officials that disrupt or prevent the exhaustion of administrative remedies may make administrative remedies effectively unavailable. *Nunez v. Duncan*, 591 F.3d 1217, 1224-25 (9th Cir. 2010). The ultimate burden of proof, however, remains with the defendants, and the evidence must be viewed in the light most favorable to the plaintiff. *Paramo*, 775 F.3d at 1191.

Here, in the instant motion for summary judgment, Defendants have renewed their argument that the excessive force claim should be dismissed for failure to exhaust administrative remedies. Dkt. 44.

As the Court noted in its February 13, 2014 Order denying the motion to dismiss, Plaintiff has previously submitted a declaration filed under penalty of perjury stating that the grievance procedure was *unavailable* to him because jail officials prevented him from submitting a grievance relating to the excessive force claim at issue. Dkt. 28 at 5-6, 14-18. Defendants again dispute this and argue that Plaintiff has manufactured the aforementioned allegations that the grievance procedure was unavailable to him, claiming that "none of the facts that make up Plaintiff's new story were alleged by Plaintiff before Defendants filed their motion to dismiss in July 2013." Dkt. 44 at 13. In addition, Defendants now argue that on his complaint form, Plaintiff made a "binding judicial admission" that "conclusively establishes the *availability* of the MDF's grievance process." Dkt. 44 at 14 (emphasis added).

The Court shall first consider Defendants' argument relating to the alleged "binding judicial admission" on Plaintiff's complaint form. The record shows that on his complaint form, Plaintiff had marked "YES" next to the question, "Is there a grievance procedure available at the institution where the events relating to your current complaint occurred?" Dkt. 1-1 at 2. He also marked "YES" next to the following questions: "Have you filed a grievance concerning the facts relating to your current complaint?" and "Is the grievance procedure completed?" *Id.* Finally, when asked to "attach copies of papers related to the grievance procedures," Plaintiff attached

1    "Exhibit (A) and (B)." *Id.* at 3. Exhibit B is a claim filed with the Board of Supervisors of Contra

2    Costa County relating to his excessive force claim. *Id.* at 10-23. Meanwhile, Exhibit A is the

3    "Notice to Claimant" relating to the aforementioned claim and rejecting it in full. *Id.* at 8.

4    Plaintiff also attached to Exhibit B a "Citizen's Report" relating to the excessive force claim. *Id.*

5    at 23. Therefore, the attached exhibits show that Plaintiff attempted to exhaust administrative

6    remedies through *other means* than the grievance procedure at MDF, but was unsuccessful. Thus,

7    the Court finds unavailing Defendants' argument that Plaintiff "admit[ted] that the grievance

8    procedure was available but he did not use it . . . ."[6] Dkt. 44 at 14. It matters not that Plaintiff did

9    not allege on the complaint form that the grievance procedure was *unavailable* to him. Instead,

10   the record shows that Plaintiff alleged in *another* verified affidavit that jail staff, including

11   Defendants, prevented proper exhaustion, thus rendering administrative remedies unavailable.

12   Dkt. 28 at 5-6, 14-18.

13   With regard to the first step of the *Albino* burden shifting test, Defendants have sufficiently

14   shown the existence of an available administrative remedy through MDF's grievance process and

15   that a search of Plaintiff's booking file and jail records does not produce evidence that he properly

16   submitted a grievance relating to the July 7, 2011 incident to all levels of review before filing the

17   instant action. Vannoy Decl. ¶ 11. Meanwhile, as explained above, Plaintiff has declared, under

18   penalty of perjury, that he attempted to exhaust his administrative remedies in July 2011, but was

19   thwarted in doing so. Upon shifting the burden to Plaintiff, the Court, viewing the evidence in the

20   light most favorable to Plaintiff, finds that he has sufficiently demonstrated that the prison's

21   administrative remedies were "effectively unavailable" to him. *Paramo*, 775 F.3d at 1191-92

---

[6] The Court also finds unavailing Defendants' argument that Plaintiff's "different positions with respect to the MDF grievance process" and "attempt to avoid dismissal and summary judgment by amending his pleadings" should be rejected on the ground of judicial estoppel. "[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). As explained above, the statements made by Plaintiff relating to his attempts to exhaust his administrative remedies (and his claim that his attempts were thwarted) are *not* inconsistent. Accordingly, there is no basis for the Court to apply the doctrine of equitable estoppel under the circumstances presented.

1  (finding that the prisoner's statements that she was thwarted from filing grievance was sufficient
2  to meet her burden of production in showing that administrative remedies were not available to
3  her); *see also Nunez*, 591 F.3d at 1224.

4  In contrast, the evidence produced by Defendants—the absence of any grievance in his
5  booking file alleging the use of excessive force on July 7, 2011—is insufficient to carry their
6  ultimate burden of proof in light of Plaintiff's verified factual allegations. *See Paramo*, 775 F.3d
7  at 1192 (finding that the declaration submitted by defendant did "nothing to rebut [the plaintiff]'s
8  evidence that administrative remedies were not available to her at the time she tried to file the
9  relevant grievance and appeal in this case").

10  Finally, as mentioned above Defendants have repeated their previous argument that
11  Plaintiff's allegations—that he was thwarted from exhausting his administrative remedies—are
12  not "credible." Dkt. 44 at 23. It is not the province of the Court on a summary judgment motion
13  to make credibility determinations or weigh conflicting evidence with respect to a disputed
14  material fact. *See T.W. Elec. Serv., Inc., v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th
15  Cir. 1987). At this juncture, Plaintiff's evidence that he attempted to file grievances but was
16  thwarted from exhausting is sufficient to defeat Defendants' motion for summary judgment. *See
17  Nunez*, 591 F.3d at 1224. Accordingly, Defendants are not entitled to summary judgment based
18  on the failure to exhaust administrative remedies at this time, and their motion is DENIED on this
19  ground.

20  **B.      Excessive Force Claim**

21  To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison
22  conditions must involve "the wanton and unnecessary infliction of pain." *Rhodes v. Chapman*,
23  452 U.S. 337, 347 (1981). Whenever prison officials stand accused of using excessive force in
24  violation of the Eighth Amendment, the deliberate indifference standard is inappropriate. *Hudson
25  v. McMillian*, 503 U.S. 1, 6 (1992). Instead, the core judicial inquiry is "whether force was
26  applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to
27  cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *Whitley v. Albers*, 475 U.S. 312, 320
28  (1986). Factors that can be considered are "the need for the application of force, the relationship

between the need and the amount of force that was used, [and] the extent of injury inflicted." *Whitley*, 475 U.S. at 321.

In the instant case, the parties have offered markedly different accounts of the altercation underlying Plaintiff's excessive force claim. Defendants contend they used only the amount of force necessary to subdue Plaintiff, who was resisting staff during an escort. In contrast, Plaintiff claims that Defendants' use of force was completely unjustified and caused him suffer an injury as result of this incident. The record presented thus reveals that there is a genuine issue of material fact as to whether the force used was applied maliciously and sadistically to cause harm.[7]

### C.     Qualified Immunity

Alternatively, Defendants argue that they are entitled to qualified immunity. The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To determine whether an individual official is entitled to qualified immunity, the Court must determine whether (1) the official violated a constitutional right and (2) the constitutional right was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful in the particular situation. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

Viewing the evidence in a light most favorable to Plaintiff, the facts presented could reasonably support a showing that Defendants used excessive force in violation of Plaintiff's constitutional rights. As to the second inquiry for qualified immunity, Defendants do not dispute

---

[7] While Plaintiff claims his left shoulder blade was fractured as a result of the alleged use of force, Defendants argue that he sustained that injury *prior to* the incident. Dkt. 44 at 19-20. Therefore, Defendants conclude that "no evidence of any allege fracture exists" and thus argue that because "plaintiff fails to demonstrate any physical injury, summary judgment should be granted for [them]." *Id.* at 20. Again, the Court, in considering a summary judgment motion, cannot make credibility determinations or weigh conflicting evidence with respect to a disputed material fact, i.e., relating to Plaintiff's injury. *See T.W. Elec. Serv., Inc.*, 809 F.2d at 630. In any event, the Court finds unavailing Defendants' argument because Plaintiff's allegations—that he was placed in an illegal restraint, that he was thrown to the ground, against visiting doors and a garbage can; and that his head was banged against the ground—support the finding that the force used by Defendants was unreasonably excessive, even if Plaintiff did not suffer significant injuries. *See Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992) (use of force that is more than *de minimus* and/or use of force of a sort repugnant to the conscience of mankind may violate Eighth Amendment even if plaintiff did not suffer significant injuries).

11

that the right to be free from excessive force was clearly established at the time of the incident, but instead argue that their conduct was reasonable under the circumstances. Whether a prison official acted reasonably is a mixed question of law and fact: "It involves an objective test of whether a reasonable official could have believed that his conduct was lawful in light of what he knew and the action he took. If there are genuine issues of material fact in issue relating to the historical facts of what the official knew or what he did, it is clear that these are questions of fact for the jury to determine." *Sinaloa Lake Owners Ass'n v. City of Simi Valley*, 70 F.3d 1095, 1099 (9th Cir. 1995). Again, construing the evidence in a light most favorable to Plaintiff, reasonable officer in Defendants' position could not have believed that their actions of using "unprovoked force"—placing Plaintiff in an illegal restraint; throwing him to the ground; banging his head against the ground; grabbing his "dreadlocked head"; throwing him against visiting doors and a garbage can; and putting their hands and feet on him—were reasonable. Because a reasonable officer could not have believed the action taken was lawful based on Plaintiff's version of the relevant events, Defendants cannot establish their entitlement to summary judgment based on qualified immunity.

Accordingly, Defendants are not entitled to summary judgment on the remaining grounds—that the evidence is insufficient to establish an unconstitutional use of force and that Defendants are entitled to qualified immunity. Therefore, their motion for summary judgment is DENIED.

## V. CONCLUSION

For the reasons outlined above, the Court orders as follows:

1. Plaintiff's motion to compel discovery responses is DENIED. Dkt. 58.

2. Defendants' motion for summary judgment is DENIED. Dkt. 44.

3. Because the Court has denied the motion for summary judgment upon using Plaintiff's verified complaint as an opposing affidavit, no further opposition is necessary; therefore, Plaintiff's request for a continuance in order to oppose summary judgment under Rule 56(d) is DENIED as moot. Dkt. 62.

4. The Northern District of California has established a Pro Se Prisoner Settlement Program. Certain prisoner civil rights cases may be referred to a Magistrate Judge for a settlement

conference. The Court finds that a referral is in order as to Plaintiff's Eighth Amendment claim. Thus, this case is REFERRED to Magistrate Judge Nandor Vadas for a settlement conference. The conference shall take place within **sixty (60) days** of the date of this Order, or as soon thereafter as is convenient to the Magistrate Judge's calendar. Magistrate Judge Vadas shall coordinate a time and date for the conference with all interested parties and/or their representatives and, within **ten (10) days** after the conclusion of the conference, file with the Court a report of the result of the conference. The Clerk of the Court shall provide a copy of this Order to Magistrate Judge Vadas.

5. If this matter does not settle, then this case will proceed to trial.

6. This Order terminates Docket Nos. 44, 58 and 62.

IT IS SO ORDERED.

Dated: March 17, 2015

YVONNE GONZALEZ ROGERS
United States District Judge